We'll hear the next case, In Re Stillwater. Good morning, Your Honors. May it please the Court, David Goroff on behalf of the Plaintiff Appellant, Stillwater Liquidating, LLC. Your Honors, the twelve Stillwater funds lost assets worth $541 million for no consideration in return, but the courts below found that there is no possible fraudulent transfer claim, not even for the Onshore Fund, which is sometimes called the Delaware Fund, against anyone, not even Net 5. And the courts made that ruling despite allowing a conversion claim against Net 5 to go forward on the very same facts. That is reversible error. The key mistake of the courts below was that they overlooked that anyone can assign their New York debtor-creditor law, state law claims to a liquidating trust, and the liquidating trust can bring those claims as assignee. And that is the holding of this Court's controlling precedent in Semitech v. Bankers Trust and substantial other authority. Wasn't the ruling that there was no assignment by a creditor, that a creditor could bring — a creditor of the Delaware Fund could bring such a claim, but that it was not done here? Wasn't that the ruling? There's no assignment to you. The Delaware Fund is a creditor of Gerova, and the Delaware Fund can bring its claims against Net 5 as a creditor of Gerova. And that's what the Court overlooked. And that's — that's what the Court — They relied on our decision in Eberhard that only creditors have standing to set aside fraudulent conveyances under a creditor. That's absolutely correct, Your Honor. And what we're saying is the Delaware Fund is a creditor of Gerova, so that when Gerova transfers en masse all of the assets that had belonged to all of the Stillwater Funds, including the Delaware Fund, as part of what we call the Net 5 or NFH transfer, that that becomes the initial fraudulent transfer. It's the transfer to Net 5 for purposes of the assigned claims that is the initial fraudulent transfer. And we note this in Count 1 of our first amended complaint, paragraphs 393 through that page. But the later transfers are all separate. Well, they're subsequent transfers. Transactions, right? Your Honor, so if what goes to Net 5 goes for no consideration whatsoever to Gerova, which is the case, then it's a fraudulent transfer to Net 5. Indeed, it's a — Did Gerova assume liabilities? Gerova had assumed liabilities of the funds. Not consideration? No, no. I'm not talking about Gerova's failure of consideration here, Your Honor. I'm talking about Net 5's failure of consideration. There are claims that we had brought as debtor against Gerova under Section 544. I'm putting those aside for the moment, even though I believe they're valid claims. There are also claims we brought by assignment on behalf of the non-debtor funds and, frankly, on behalf of Gerova themselves. This morning, I'm focusing on the claims that belong to the Delaware or Onshore fund because that is the fund that actually owned the properties. If Your Honor's — And your ability to do that is because of what? Because of an assignment that was effectuated through the plan of confirmation which approved four distinct documents, the global — The master settlement, is that what you're talking about? The global settlement agreement, the Stillwater agreement, the LLC agreement. And the Delaware fund was a signatory or participant in those documents? It was a signatory through Stillwater Capital Partners, which managed and controlled the entities. Yes, Your Honor. It also, Your Honor, was given notice and opportunity to be heard in the bankruptcy court and, therefore, was able to have objected or, if any of its creditors objected. How is Delaware's assets part of the bankruptcy estate? They're not part of the bankruptcy estate, but under related to jurisdiction and by operation of the plan, the debtor's estate receives 40 percent of recoveries on all claims, including on assigned claims. And Judge Wiles agreed that that creates a basis for related to jurisdiction as to these pre-confirmation claims. Indeed, he also noted that these claims could be brought potentially in the bankruptcy under supplemental jurisdiction under 28 U.S.C. 1367. He found that the weight of authority supports that, but that he did not need to reach that because of his related to jurisdiction findings. So there's definitely jurisdiction for this Court to consider that. It's definitely pleaded. Judge Wiles noted that we, at page SA60 of our supplemental appendix, that we had, in fact, argued to him that we had standing to pursue fraudulent transfer claims in the capacity of a creditor of Gerova, and that is what I am talking about today. Why are we a creditor of Gerova? Because Gerova, as part of both the merger agreement and the asset purchase agreements that are at issue, these two threads, the Delaware fund was part of a merger agreement, both provided that as consideration, as merger consideration,  Gerova would issue stock at the time of closing and, as Your Honor noted, would assume debts at the time of closing. The stock it was to issue was to become immediately traded, I'm sorry, automatically tradable six months later without any further activity by anyone over a six-month period. It's the beginning of July of 2010. That did not happen. We have Jack Dueck's testimony who ran Stillwater Capital Partners, which controlled the funds, and who also served on the board of Gerova. He testified in the criminal trial of Gary Hurst, the president of Gerova, for securities fraud, that the funds got nothing, that their investors lost everything. He also, his counterpart, whose name is Richard Rudy, also testified in the involuntary proceeding by which this bankruptcy began before Judge Gropper, who had this case before he retired. And in that testimony, Mr. Rudy said that the funds had received nothing as part of the transfers to Gerova as well. And that's reflected in the involuntary decision, which is also part of the appendix in the record before this Court. So Judge Weill says, well, if you didn't get that, that's a breach of contract. And I'm, for purposes of this argument, accepting that. If you have a contract and it is breached, that makes you a creditor of the party who breaches, in this case, Gerova. So then the question becomes, does Gerova have a transfer that constitutes a fraudulent transfer? And in the case of the transfer to Net-5, we know it does. If you have a participation interest created, why does that necessarily make you a creditor? I'm confused by that argument. Because, Your Honor, the participation interest belongs to a different... You have a beneficial interest in the property and the loans. How does that make you a creditor, for purposes of being able to bring a fraudulent transfer? Because, Your Honor, speaking of a different fund, Your Honor, speaking of the debtor fund, which is known as the Stillwater Asset Backed Offshore Fund, it had participations in properties which were actually owned in title by what I'm calling the Delaware Fund, the Stillwater Asset Backed Fund. Okay? So there's no participation at issue here. I am, for purposes of this argument, I don't need to reach whatever interest the debtor has. If the debtor had no interest, that just makes the Delaware Fund's interest larger. And so what I'm saying is, by not getting the promised stock or the promised assumption of debts from Gerova, that, at the very least, breached Gerova's contract obligation under the merger agreement to provide merger consideration. So what happens next? We have the Net 5 Operating Agreement, which is at Stillwater, I'm sorry, the appendix at 668-736, Your Honors. In that document, Gerova Financial Group, which, by the way, is not the entity that supposedly is the merged entity, Gerova Financial Group, or GFG, contributes all of the properties we have at issue here, the Hillendale property, the Boggy Creek property, the St. Augustine property, the King's Hotel property, all of them, they're on a list at page 729-31 of the appendix. What does Gerova get for this? Nothing. Gerova had 100 percent control before. Gerova had 100 percent ownership before. Its funds get nothing. It gets nothing. That constitutes a fraudulent transfer to Gerova. We, as assignee, can bring that claim. In what document, in the settlement documents, is there any reference to an assignment by anybody? Yes, there is. What would you point to in the settlement documents of a claim? Section 2.3 of the LLC agreement, which talks about the right to bring all claims, including but not limited to State law claims, 544 claims, and other claims under the Bankruptcy Code, but the assignment is effectuated because all of the non-debtor funds are receiving releases. They're also receiving percentage interest in recoveries in exchange for transferring their interests to the liquidating trust, to AUSA Central. Was it implicit? It was implicit? It's not implicit. It's expressly stated. Where is it stated? I don't have the appendix in front of me. It's stated in the GSA, and it's stated in, I believe, it's called the LLC agreement. But why don't you tell us where? Because I don't. You're here now. Why don't you tell us where? I can't. Maybe when you sit down, you can look. I will, in fact, look, because we have the appendix somewhere in the courtroom. But, Your Honor, there's not been a question. When Judge Wiles accepted that the assigned claims, the claims were assigned, and that there is standing to bring those claims, indeed, if there was no standing to bring claims for the non-debtor funds, then the 40% recovery by the debtor would be meaningless, right? Because you wouldn't share 40% of the recoveries on assigned claims. There'd be no assigned claims. So, and the fact is that Stillwater Capital Partners indisputably acted for these funds. They receive a release. Also, Your Honor, this was approved by Judge Scheindlin as well, who was overseeing a series of claims. On page 23 of the Bankruptcy of Court Opinion, the court said that plaintiff's not representing that creditors of the Stillwater funds assign their fraudulent claims, transfer claims to the plaintiff, and that the FAC does not allege as much. So I don't understand. Well, he's incorrect about that, Your Honor. But he does say that we can bring claims by assignment of the other funds. Remember, fraudulent transfer are not the only claims. We also have state law, common law claims. He said that he said the claims were assigned. I thought that's what I heard you say. He agreed that he questioned because he didn't see a separate signature block for the non-debtor funds while he saw one for the debtor fund. And then he said, but no party has raised that, and so he is going to assume we have standing for purposes of that argument. And so that is the state of affairs before, Your Honors. And again, Judge Gropper found as part of the plan confirmation order that we could bring claims on behalf of assigned claims. Judge Scheinland, because this resolved claims in the four class actions that were overseen by Judge Shira Scheinland on the district court, and she approved this as well. The Jerova bankruptcy court in Bermuda approved this as well because it was an omnibus settlement which was intended to sort of solve all the problems of the various entities, and ultimately their creditors, who were injured by these transfers. And so that is how we came to have the right to bring those claims. So there's no question in the record, which is why, Your Honors, I don't have the pinpoint site in front of me, because that's not raised as an issue on appeal. That's not – that wasn't in the decision by Judge Wiles as to why there was no claim. Judge Ramos, in affirming, says you have to meet the standards of 544. He didn't deny that we're an assignee, but he's wrong on that. Under the Semitech case, that's incorrect. You don't have to meet Section 544 standards to bring an assigned claim. Roberts. You've saved some time for rebuttal. Yes, I have. We'll hear from the police. Thank you very much, Your Honors. Good morning, Your Honors. My name is David Phibes, and I represent the Appalese SFN DeKalb Holding and Judge Street. They are two transferees of these funds that counsel has just discussed. The SFN previously had a matter before this court on the issue of whether or not to transfer to SFN was a violation of the automatic stay. And this court has ruled that the interest that the debtor offshore fund had in this particular property was not an interest in the real estate or in the lien. It was an interest to receive a flow of monies from the loan that was then titled in the onshore fund that had gone transferred. SFN went to a tax foreclosure in Georgia. Everybody in the chain of title got notice of the sale. That's conceded. And we received a fee interest of property. We did not receive this unrecorded beneficial interest that is claimed by the offshore fund  in the property. Consequently, SFN DeKalb cannot be a transferee of either fund, and the claims were properly dismissed. Whether they had an assignment, whether they didn't have an assignment, as to SFN, it's irrelevant. Turning to Judge Street. Now that is addressed on one page of their brief, page 49. They concede that the property, the title in Judge Street, was in 15 Judge Street LLC. They claim the Delaware Fund was the member or the owner of 15 Judge Street LLC. My client, 15 Judge Street Realty LLC, purchased from 15 Judge Street LLC. We never purchased from the Delaware Fund. If, in fact, the Delaware Fund was the sole member of my grantor, they may have a claim against their members who sold it to me. But again, my title did not come from the Delaware Fund. Consequently, Judge Street Realty is not a transferee of the Delaware Fund. There is no claim against 15 Judge Street Realty with respect to that asset. Whether counsel's correct or not that they had an assignment is irrelevant with respect to my two clients. Unless the Court has any questions, I'll rest on my brief. Thank you, sir. Good morning. May it please the Court. My name is Jonathan Nelson, and I represent the Pelley Calhoun Commercial Construction LLC. I share a lot of the arguments with Mr. Fiveson, so I'll try not to repeat them verbatim, but I think some deserve some stressing. As this Court did hold in Stillwater Liquidating LLC v. FSN DeKalb, that's 229 Federal Appendix 69, the exact same language that's at issue here, the exact same language did not provide the debtor with an interest in the real property. Of course, without an interest in the real property, there's simply no basis to assert a fraudulent conveyance under 544B. An interest in the cash flow of the fund's loan, which is what this Court found that the language conveyed, is not sufficient to confer standing for a fraudulent conveyance cause of action in real property. But secondly, and this really boils down to three reasons, I think, although there's a litany of reasons why the Court's decision was right, but secondly, Calhoun is a bona fide purchaser for value of real property, purchased from Net 5 Holdings, by the way, not from the Delaware Fund, but in Georgia. And so all the causes of action that are asserted in the complaint are based upon a fraudulent conveyance under New York debtor-creditor law, and it's clear that New York statutes are inapplicable to the Calhoun property. I think all the properties are located in Georgia, but certainly the Calhoun property is. I don't think that was ever actually the choice of law, and the failure to address Georgia law in the complaint and reliance solely on New York debtor-creditor law was never addressed. What also wasn't addressed was, as I mentioned, Calhoun is a bona fide purchaser for value and is protected by its bona fide status, and the plaintiff has alleged nothing with regard to any notice on the part of Calhoun of any purported fraud, has alleged nothing with regard to any purported bad faith on the behalf of Calhoun, has alleged nothing of any purported knowledge of Calhoun, of plaintiff's alleged interest in the property, not to mention, quite frankly, that hasn't satisfied the burden under Rule 7009. And so for these reasons, as well as those set forth at length in my brief, the district court's judgment dismissing the complaint should be affirmed. But before I leave with the court's indulgence, unrelated, it's a difficult day today. I know, like me, a lot of people had lost people 18 years ago. My cousin, who was an attorney at Harris Beach and the World Trade Center, I think would be privileged and honored if I put her name on the record of this honorable court, Joanne F. Weil. Thank you. Thank you. May it please the Court, Brian Greco for John and Yvette Daniel, Stephen and Vicki McDonald, and Paradigm Credit Court. I have three buckets of clients. Some of them dealt with the Delaware Fund, purchased properties from the Delaware Fund. Some of them, like Mr. Fiveson's client, dealt with entities unrelated to the Delaware Fund, entities that were assignees of assets that were originally owned by the Delaware Fund, were transferred on and were used as collateral for loans that Paradigm made. Since I have so little time, I'll address the assignment issue. One thing I'll note is I believe the bankruptcy court did make a statement in its ruling that the GSA, the Global Settlement Agreement, did not include the Delaware Fund as a party. And then because the issue wasn't raised at that time, he made the assumption, Judge Weils, that even if the assignment happened, it doesn't matter. And I'll address why it doesn't matter and why Semitech doesn't apply. What we're saying here is that a debtor in bankruptcy takes the assignment from a non-debtor of claims that creditors of the non-debtor may have and can now run to bankruptcy court and assert those claims. That's no different than me. I'm not a debtor. I want to sue Mr. Fiveson, a non-debtor. I get a claim assigned to me and now I have the right to go into bankruptcy court. The only way to get into bankruptcy court on these claims is 544. 544 talks about an interest in property of the debtor at the time of the commencement. So the interest in property here, for example, the Daniels, they purchased property from the Delaware Fund at the time of the bankruptcy. The Delaware Fund owned that property. All this about the Gerova transfer, it doesn't matter. The merger, it doesn't matter. Because when you look at the documents attached to the supplement, the Delaware Fund owned this property when my client bought it. The deed says my client bought it from the Delaware Fund. So creditors of the Delaware Fund can assign to a litigation trust the right to go into bankruptcy court under 544 to assert claims. 544 specifically says the property transfer, 544B, the property transfer must be an interest of the debtor. We don't have that for any of the claims here. Obviously, conspiracy claims, there's no transfer. The transfer of the other subsidiaries were subsidiaries of the Delaware Fund. The only interest that's ever been alleged in this case were participation agreements. Those were addressed at length by the bankruptcy court. The participation interest did not give the debtor an interest in those loans or in the property. So there's no way he can use 544. What Mr. Groff is doing is he's saying that he still has the right in bankruptcy court to assert State law claims. You only get your State law claims under 544. I've addressed this in my brief, so I'll rest here with my time being up. Any questions, Your Honor? Thank you. Thank you. May it please the Court, Bruce Minkoff on behalf of Appellee Saunders, LLC. Everything you just heard from Mr. Greco regarding Section 544 and property of the State applies to Saunders as well as it applies to all the other appellees. With some allegations specific to Saunders, every one of the extrinsic and intrinsic red flags, which are alleged in the complaint, did not arise until after Saunders made its loans. Therefore, none of those allegations, which are constantly made by the appellant, have any application to Saunders. Appellant attempts to manufacture a claim against Saunders to impart a factual misrepresentation at page 48 of Appellant's reply brief. Saunders made two loans, the first in June of 2010 for $501,000 secured by a mortgage on a property in the Villages, Florida. That was originally a Net-5 property. None of the Stillwater funds owned that property, and Jerova didn't own that property. The second loan was for $300,000 made in September 2010 secured by a mortgage on a property known as Boggy Creek, which was owned by a limited liability company of which the onshore fund was a member, but neither the debtor nor the onshore fund was the actual owner of that property. Page 48 of the reply brief states that the $501,000 loan was secured by a mortgage on the Boggy Creek property, but that's not true, which is made clear from the various transactions set forth at pages 13, 14 through 13, 16 of the appendix. From that misrepresentation, they attempt to create an argument that the loan in June of 2010 was beset by title irregularities on the Boggy Creek property, but there was no loan on the Boggy Creek property in June of 2010. That loan came later. At the time that loan was made, those alleged irregularities, as I read the allegations of the complaint, did not exist, and there was no title issues that were raised at that time by Saunders Title Company. They also claim that the loan proceeds were not paid directly to the borrowers but to other entities. However, there's nothing uncommon about a borrower designating where they want loan proceeds to be paid, so there was nothing fraudulent, nothing improper in any way about how the loan proceeds were dispersed, nothing that would excite suspicion. Essentially, since this $501,000 loan came from a Net-5 property, it really has nothing to do with any of the allegations based on what Mr. Goroff said about the Jirova to Net-5 transfer being fraudulent, but Net-5 already owned this property, so that property wasn't transferred. So essentially, for a $300,000 loan, my client is being sued for $50 million plus punitive damages, and that loan was made long before all these red flags applied. I see my time is up. Thank you. One more. One more. That's it. Thanks. Okay. Good morning. May it please the Court. I'm Cliff Katz, Placer-Swergold Counsel for the appellee Alma Bank. Alma is a New York State chartered commercial bank headquartered in Astoria, Queens. I concur with my comments of my fellow appellee with respect to lack of standing of the plaintiff as well as the inability of the plaintiff to use Section 544 of the Bankruptcy Code. As it relates to Alma Bank, however, plaintiff's claims are especially overreaching. The plaintiff alleges that Alma is liable under Bankruptcy Code 550 as a subsequent transferee. However, as set forth in our brief, Alma was never transferred anything, be it the debtor's property, still water or offshore, or property of the non-debtor Delaware Fund. On February 18th of 2014, Alma closed on a loan with King's Hotel, Inc. for the King's Hotel property and issued its own mortgage and its own note. These are identified in the Supplemental Appendix Document 226, page SA46, for $5 million. So on February 18th, Alma was not transferred anything. Alma lent King's Hotel, Inc. $5 million as owner of the property, took back a $5 million mortgage and note. Part of the loan proceeds used by the King Hotel were probably used to satisfy the net five King's Hotel note and mortgage, which plaintiff incorrectly asserts was assigned to Alma. Alma's mortgage and note were recorded in the King's County Register. They're also in the Supplemental Appendix and are a public record. Therefore, under any scenario, there wasn't any concern. That note, that loan has never been foreclosed on, right? As a practical matter, right now it is technically in default, but it has not yet been foreclosed on. So Alma, I mean, at some point Alma could own the property, but it's not. At some point Alma could own the property, but not at this point. That is correct, Your Honor. All right. Thank you. As paragraph 51 of the first amended complaint states, that plaintiff's allegation that Alma is a subsequent transferee of the King's Hotel mortgage, without consideration, is just factually incorrect. All of plaintiff's causes of action against Alma arise from this factually incorrect allegation that Alma was the ultimate transferee. The King's Hotel note and mortgage started in 2006, and then there were a variety of different transfers between a number of entities. But at the end of the day, Alma wasn't one of them. To survive a motion to dismiss, the complaint must state a claim that the relief is plausible on its face. That's the Ashcroft or Ingball case in the Supreme Court. We would submit that as it relates to Alma, the plaintiff willfully misses this standard. Thank you. Thank you. We'll hear the reply. Thank you, Your Honor. Your Honor, I mean, that seems like a simple point. Alma has never owned the property. On what basis do you sue it for a fraudulent conveyance? Because the ownership was not in the underlying property. It was in a mortgage for the property and a lien. And that mortgage and lien were converted by Net-5. Net-5 then takes the ---- What did Alma do that was wrong? It received basically the benefit of a full lien. It made a $5 million loan to someone. Right. But the property it succeeds to is property that would have been in ---- It hasn't succeeded to any property. The lien it gets is a lien that would have been subordinate and junior to the loan that had there not been a conversion would have belonged to the funds. Is the Delaware ---- I'm sorry. Go ahead. No, go ahead. Is the Delaware Fund a creditor of Stillwater, the debtor? The Delaware Fund ---- Was the Delaware Fund a creditor of the debtor? No. The Delaware Fund is a sister ---- Then how is an assignment of anything from Delaware, even if it occurred, an assignment of something of the bankruptcy estate? Because of related to jurisdiction because when you stand to get 40% of the recoveries as the debtor, that creates a basis for jurisdiction to take assignments because those claims generate money. What were your claims against the Delaware Fund? Why would the Delaware Fund pay you a dime? The Delaware Fund was sued for breaches of fiduciary duty and other things in a series of class actions. Four of them. In a global settlement that they're never mentioned or ---- Well, they are. Actually, paragraph 12 refers to assigned claims by other parties. But remember, Your Honor ---- Hold on. Please. Assigned claims by the non-debtor funds. And they are referenced specifically throughout that document, Your Honor. Your Honor, neither court below found that there was any issue of jurisdiction here or any failure of assignment. It was an observation by Judge Wiles that he ultimately didn't act on, and for good reason. Because Stillwater Capital Partners indisputably controlled these entities. It signed these documents. The reason the debtor signed separately is Stillwater Capital Partners did not control it. It was controlled by its chief restructuring officer, Evan Bloom, at the time. By the ---- Remember also, Your Honors, the debtor has claims in this case. The bankruptcy court and the district court recognize there are ---- Well, you don't do all these transactions for which fair consideration was paid. I think the State ---- I think the ---- The answer is yes, Your Honor. I don't believe fair consideration was paid. That's their affirmative defense. And I think some of what you heard is, in fact, inaccurate. Entitled insurance companies issued fraudulent policies. Banks gave fraudulent loans 24 times. That's what happened here. There's a series of fraudulent ---- If you receive ---- If someone steals my candlesticks, Your Honor, and gives them to you, you are the recipient of stolen property. They give them to me, but if I pay their fair ---- If you pay for them. Excuse me. I'm sorry, Your Honor. If I pay their fair value, you're not getting your candlesticks back unless, under New York law, I know they're stolen. That's correct, Your Honor. It's a good-faith, fair-value defense, and it belongs to the defendant. It is not something I have to plead does not exist. The reason in Madoff ---- Let me ask you this. With respect to the New York statute, do you agree that you have to go through Section 544B? No, that's my point. Or do you bring that as an independent cause of action? That's my point, Your Honor. Absolutely. That's why we say ---- What's the basis for saying you can bring it outside of 544B? Because you ---- Is there authority for that? Semitech. Semitech says you can bring any claim. Greed v. Bank of New York. Judge Easterbrook in the oral argument in the Seventh Circuit on Greed v. Bank of New York said to the Bank of New York, are you telling me that 7 billion people can be assigned a claim and the only one who can't is a trustee in bankruptcy? And that remains the point. You don't have to have the claim. That's what the district court held in Semitech that this Court adopted as the ruling of the circuit in the In re Bankers Trust affirmance of that. All right. We've had enough of this. Thank you. Thank you. Thank you very much, Your Honor.